UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | MAGISTRATE NO. |
| | : | |
| v. | : | VIOLATION:  2 U.S.C. § 192 |
| | : | (Misrepresentations to Congress) |
| MIGUEL O. TEJADA, | : | |
| | : | |
| Defendant. | : | |

### INFORMATION

The United States Attorney hereby informs the Court that:

1. At all time relevant to this Information, defendant TEJADA was a baseball player playing in Major League Baseball ("MLB").  From in or about 1997 through in or about 2003, defendant TEJADA played for the Oakland Athletics, and from in or about 2004 through in or about 2007, he played for the Baltimore Orioles.

2. At all relevant times, defendant TEJADA was a citizen of the Dominican Republic, in the United States on a work permit, whose native language was Spanish, but who spoke English as a second language.

3. At all relevant times, the use of steroids by MLB players was banned by MLB, and this prohibition was added to the players' collective bargaining agreement in or about August of 2002.  In or about January of 2005, human growth hormone ("HGH") explicitly was added to the list of prohibited performance enhancing substances for players in MLB.

**A. Defendant's Discussions With Player #1 Regarding Steroids and HGH**

4. In or about spring of 2003, another player on the Oakland Athletics (hereinafter "player #1") had a locker nearby that of defendant TEJADA's in the Athletics's clubhouse.  Defendant TEJADA mentioned to player #1 that he looked in great shape physically and asked player #1 what

he was doing to help him be in such good physical shape.

    5. As a result of the conversations set forth in paragraphs 4, above, during spring training in 2003, defendant TEJADA and player #1 had several conversations about player #1 using steroids and HGH. Subsequently, defendant provided to player #1 two checks, both dated March 21, 2003, in the amounts of $3,100 and $3,200 respectively, for substances which he believed to be HGH. Player #1 did not know whether defendant TEJADA actually used the substances that he purchased from player #1.

    **B.  Congressional Committee's Hearings About Steroids in MLB Baseball**

    6. On or about March 17, 2005, the Committee on Oversight and Government Reform ("Committee"), House of Representatives, Congress of the United States ("Congress"), which is located in Washington, D.C., held a hearing in Washington, D.C., entitled "Restoring Faith in America's Pastime:  Evaluating Major League Baseball's Efforts to Eradicate Steroid Use." Congress had the Constitutional power to investigate, among other things, the use of performance enhancing drugs, including steroids and HGH, in MLB. The Committee was duly empowered to conduct the investigation and the inquiry concerning the use of performance enhancing drugs was in the scope of the grant of authority.

    7. During the hearing discussed in paragraph 6, above, former Baltimore Orioles baseball player Rafael Palmeiro appeared before the Committee and testified under oath that he had never used steroids. On or about August 1, 2005, MLB announced that Palmeiro had violated the MLB's Joint Drug Prevention and Treatment Program and would be suspended for 10 days. Palmeiro subsequently acknowledged that he had tested positive on May 4, 2005, for the banned anabolic steroid stanozolol, the generic name for Winstrol. After learning of Palmeiro's positive test results,

the Committee, pursuant to the authority of Congress and the Committee, opened an investigation to determine whether or not to refer the matter involving Palmeiro to the United States Department of Justice for further investigation and possible prosecution for perjury.

8. On or about August 25, 2005, during the investigation by the Committee, discussed in paragraph 7, above, in a transcribed interview by Committee staff, Palmeiro denied knowingly using steroids. He stated that the positive steroid test could have resulted from use of an injectable form of vitamin B-12 that he claimed he received from his teammate, defendant TEJADA, in mid-April of 2005. Palmeiro said that defendant TEJADA offered him the B-12 and told him that the shots gave defendant TEJADA energy. Palmeiro told Committee staff that he believed that the B-12 injection was contaminated which resulted in his positive test for steroids.

### C. Committee Staff Interview of Defendant TEJADA

9. On or about August 26, 2005, Committee staff conducted a transcribed interview in Baltimore, Maryland, of defendant TEJADA, in the presence of his attorney and a Spanish language interpreter. Before the questioning began, Committee staff told defendant TEJADA and the others present that "[t]he chairman and the ranking member [of the Committee] want to express their appreciation for your cooperation with the committee[.]" The Committee staff also told defendant TEJADA that they were there "to ask questions regarding substances that you may have supplied to Rafael Palmeiro and related matters." Finally, although defendant TEJADA was not placed under oath, the Committee staff advised defendant of the importance of providing truthful answers.

10. As part of the August 26, 2005, interview, defendant TEJADA was generally questioned by Committee staff about, among other things, his knowledge of MLB players, including himself, discussing or using steroids and other banned performance enhancing substances. Defendant

TEJADA told the Committee staff that he never used illegal performance-enhancing drugs and that he had no knowledge of other players using or even talking about steroids or other banned substances.

11. Specifically, during the August 26, 2005, interview, Committee staff asked defendant TEJADA about his awareness of any discussions among baseball players about steroids. The following exchange took place:

| | |
|---|---|
| Committee Staff: | Has there been discussions among other players about steroids? |
| TEJADA: | <u>No, I never heard.</u> |
| Committee Staff: | You never heard any of that? |
| TEJADA: | <u>No.</u> |

12. Specifically, during the August 26, 2005, interview, Committee staff asked defendant TEJADA whether he knew any other player on the Oakland Athletics who used steroids. The following exchange took place:

| | |
|---|---|
| Committee Staff: | When you were playing with the Oakland A's, they had a reputation in some places as a place where a lot of players used steroids; were you aware of that? |
| Interpreter: | In the big leagues or in the minor leagues? |
| Committee Staff: | Big leagues. |
| TEJADA: | No. |
| Committee Staff: | You never knew of any other player using steroids? |
| TEJADA: | <u>No.</u> |
| Committee Staff: | Or just that it was even an issue for some players? [The question was translated by the interpreter.] |
| TEJADA's attorney: | Are you suggesting when he was playing with Oakland or today? |
| Committee Staff: | When he was playing? [The question was translated by the interpreter.] |
| TEJADA: | <u>I didn't know any player.</u> |

### D. The Mitchell Report

13. On or about December 13, 2007, former-United States Senator George J. Mitchell issued a report, entitled "Report to the Commissioner of Baseball of an Independent Investigation into the

Illegal Use of Steroids and Other Performance Enhancing Substances by Players in Major League Baseball" ("The Mitchell Report").  The Mitchell Report contained information that appeared to contradict the statements by defendant TEJADA to the Committee staff, discussed in paragraphs 11 and 12, above.

14.  On or about January 15, 2008, in light of these contradictions and the evidence in the Mitchell Report, the Committee requested the United States Department of Justice investigate whether defendant TEJADA "made knowingly false statements to the Committee[.]"  The Committee stated that it was "especially concerned about the veracity of Mr. Tejada's statements because they materially influenced the course of the Committee's investigation in 2005."

### E.  Defendant TEJADA's Misrepresentations to the Committee

15.  On or about August 26, 2005, in the District of Columbia and elsewhere, defendant TEJADA, having been requested by the Committee to provide information upon a matter of pertinent inquiry before the Committee, unlawfully, willfully and knowingly did make default by refusing and failing to state fully and completely the nature and extent of his knowledge of and discussions with other MLB players, specifically player #1, regarding player #1's use of steroids and HGH.

16.  In making the underscored statements and representations noted in paragraphs 11 and 12, above, defendant TEJADA unlawfully withheld pertinent information from the Committee because

defendant TEJADA, before and during his interview with the Committee staff, then and there well knew that player #1, one of his teammates on the Oakland Athletics, had used steroids and HGH.

**(Misrepresentations to Congress, in violation of Title 2, United States Code, Section 192)**

                                Respectfully submitted,

                                JEFFREY A. TAYLOR
                                UNITED STATES ATTORNEY
                                D.C. BAR # 498610

BY: _____/s/_____
        STEVEN J. DURHAM
        Chief
        IL Bar #6201108
        DANIEL P. BUTLER
        Senior Litigation Counsel
        D.C. Bar # 417718
        Assistant United States Attorneys
        Fraud & Public Corruption Section
        555 Fourth Street, N.W., 5th Floor
        Washington, D.C. 20530
        (202) 514-8316 and 353-9431
        Steven.Durham@USDOJ.Gov
        Daniel.Butler@USDOJ.Gov